DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAWNWOOD MEDICAL CENTER, INC.,** d/b/a
**LAWNWOOD REGIONAL MEDICAL CENTER AND HEART INSTITUTE**
and **PATRICK REGAN, D.O.,**
Appellants,

v.

**GWENDOLYN ROUSE,**
as Personal Representative of the Estate of Marleana Rouse, et al.,
Appellees.

No. 4D2022-2637

[July 3, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Laurie E. Buchanan, Judge; L.T. Case No. 562020CA000082.

Raoul G. Cantero, Sara E. Cendejas, and Torri D. Macarages of White & Case LLP, Miami, for appellants.

Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, PA, West Palm Beach, and Michael V. Baxter of Schuler, Weisser, Zoeller, Overbeck & Baxter, P.A., West Palm Beach, for appellee Gwendolyn Rouse.

_**EN BANC**_

GERBER, J.

In this appeal, we enforce section 44.103(5), Florida Statutes (2021), which provides: "An arbitration decision shall be final if a request for a trial de novo is not filed within the time provided by the rules promulgated by the Supreme Court." Here, because the appellants did not file a "motion for trial … within 20 days of service on the parties of the [arbitration] decision" pursuant to Florida Rule of Civil Procedure 1.820(h), and did not seek to show excusable neglect for their untimeliness under Florida Rule of Civil Procedure 1.540(b)(1), the circuit court correctly entered judgment against the appellants as "required to carry out the terms of the [arbitration] decision as provided by section 44.103(5), Florida Statutes."

We issue this opinion en banc to recede from *Nicholson-Kenny Capital Management, Inc. v. Steinberg*, 932 So. 2d 321 (Fla. 4th DCA 2006).  As we will discuss in more detail below, *Nicholson-Kenny* did not require the filing of a motion for trial under certain circumstances.  That precedent clearly conflicts with section 44.103(5) and rule 1.820(h), and no valid reliance interest or other reason exists not to recede from that precedent.  Thus, such precedent must yield.  *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020).

As we will further discuss below, based on our receding from *Nicholson-Kenny*, we also certify conflict with two Second District cases—*de Acosta v. Naples Community Hospital, Inc.*, 300 So. 3d 264 (Fla. 2d DCA 2019), and *Beyond Billing, Inc. v. Spine & Orthopedic Center, P.C.*, 362 So. 3d 256 (Fla. 2d DCA 2023)—both of which had relied upon *Nicholson-Kenny*, which we now hold was incorrectly decided.

We present this opinion in four parts:
1. The procedural history;
2. The parties' arguments on appeal;
3. Our review, including why we recede from *Nicholson-Kenny*; and
4. Why we stand by our other recent holdings applying rule 1.820.

## 1. *Procedural History*

After a family member's death during hospitalization, the appellee personal representative filed a medical negligence action against five physicians, including appellant Dr. Regan, and two hospitals, including appellant Lawnwood, and related entities.

In March 2022, the circuit court entered an order setting the case on a September 2022 trial docket.  In the same order, the court referred all issues to nonbinding arbitration, pursuant to section 44.103, Florida Statutes (2021), and Florida Rule of Civil Procedure 1.820.

Section 44.103 pertinently provides:

> (2)  A court, pursuant to rules adopted by the Supreme Court, may refer any contested civil action filed in a circuit or county court to nonbinding arbitration.
>
> ...
>
> (5)  The arbitration decision shall be presented to the parties in writing.  *An arbitration decision shall be final if a request for a trial de novo is not filed within the time provided by rules*

2

*promulgated by the Supreme Court. … If no request for trial de novo is made within the time provided, the decision shall be referred to the presiding judge in the case who shall enter such orders and judgments as are required to carry out the terms of the decision ….*

§ 44.103(2), (5), Fla. Stat. (2021) (emphases added).

Rule 1.820 pertinently provides:

**(g) Completion of the Arbitration Process.**

…

(3) Within 10 days of the final adjournment of the arbitration hearing, the arbitrator(s) shall notify the parties, in writing, of their decision. …

**(h) Time for Filing Motion for Trial.** Any party may file a motion for trial. … *If a motion for trial is not made within 20 days of service on the parties of the decision, the decision shall be referred to the presiding judge, who shall enter such orders and judgments as may be required to carry out the terms of the decision as provided by section 44.103(5), Florida Statutes.*

Fla. R. Civ. P. 1.820(g)(3), (h) (italics and underlining added).

In May 2022, the arbitrator rendered a decision. The decision found two of the physicians—Dr. Regan and Dr. Tamar—were negligent, and both were Lawnwood's agents. The decision found two other physicians were not negligent. The decision did not include findings regarding the fifth physician, the second hospital, and the related entities.

The arbitrator's decision apportioned 30% of the fault to Dr. Regan and 70% to Dr. Tamar, found Lawnwood was vicariously liable for those two physicians' negligence, and found the personal representative was entitled to recover $6,534,700 in damages for the decedent's estate.

Dr. Tamar and his employer, Locumtenens, timely filed a motion for a trial de novo under rule 1.820(h) as to the personal representative's claims against them. Contemporaneously, the personal representative timely filed two motions for a trial de novo under rule 1.820(h) as to claims against the remaining physicians and entities whom the arbitrator had not found were negligent, and two derivative agency claims against Lawnwood.

3

Dr. Regan and Lawnwood, however, *did not* timely file a motion for a trial de novo under rule 1.820(h). Instead, after being served with the arbitrator's decision, their counsel took the following other actions within rule 1.820(h)'s twenty-day deadline period:

- Within hours after being served with the arbitrator's decision, Dr. Regan's and Lawnwood's counsel contacted the personal representative's counsel to discuss settling the claims which had just been arbitrated.

- Also within hours after being served with the arbitrator's decision, Dr. Regan's and Lawnwood's counsel discussed with the personal representative's counsel providing Dr. Regan's and Lawnwood's authorizations for the personal representative's counsel to obtain certain medical records, which authorizations were then emailed to the personal representative's counsel.

- Four days after being served with the arbitrator's decision, Dr. Regan's and Lawnwood's counsel again contacted the personal representative's counsel to discuss settlement.

- Eight days after being served with the arbitrator's decision, Dr. Regan's and Lawnwood's counsel followed up with the personal representative's counsel about the medical records authorizations.

- Fifteen days after being served with the arbitrator's decision, and after coordinating with the personal representative's counsel over five days, Dr. Regan's and Lawnwood's counsel set a mediation.

Twenty-two days after being served with the arbitrator's decision—*that is, two days after rule 1.820(h)'s twenty-day deadline had passed*—Dr. Regan's and Lawnwood's counsel filed a motion for a trial de novo.

Because Dr. Regan and Lawnwood had untimely filed their motion for a trial de novo, the personal representative filed a motion for final judgment against Dr. Regan and Lawnwood. The personal representative's motion sought a final judgment for the amount recommended in the arbitrator's decision.

Dr. Regan and Lawnwood filed a response requesting the circuit court to deny the personal representative's motion and to accept their motion for a trial de novo as timely filed. Their response raised two basic arguments.

4

First, Dr. Regan and Lawnwood argued entering judgment against them would be premature and inequitable. According to Dr. Regan and Lawnwood, the arbitrator's decision was not final because the decision had not addressed the personal representative's actions as to all defendants. Dr. Regan and Lawnwood further argued that if Dr. Tamar's requested trial de novo resulted in a finding that Dr. Tamar had not been negligent, or had been at fault to a lesser degree, Lawnwood would inequitably remain vicariously liable for the arbitrator's 70% apportionment of fault to Dr. Tamar. Based on those scenarios and others, Dr. Regan and Lawnwood argued the jury's decision could result in inconsistent findings of liability, damages, and apportionment of fault, thus raising the possibility of inconsistent judgments and potential windfalls to the decedent's estate.

Second, Dr. Regan and Lawnwood argued they had substantially complied with rule 1.820(h)'s twenty-day deadline, because their counsel's conduct after the nonbinding arbitration had demonstrated their intent not to accept the arbitrator's decision, and instead proceed to trial. Dr. Regan and Lawnwood noted: (a) the circuit court already had set the case on its September 2022 trial docket; (b) after the arbitration, their counsel, on multiple occasions, had communicated with the personal representative's counsel about settlement and medical records authorizations; and (c) before and after the arbitration, their counsel had discussed scheduling a mediation with all parties, resulting in a mediation being scheduled in August 2022—one month before the trial docket.

After a non-evidentiary hearing, the circuit court entered an order granting the personal representative's motion for final judgment. The circuit court's ensuing judgment included findings conforming to the arbitrator's liability determinations against Dr. Regan and Lawnwood. The judgment awarded the decedent's estate $6,534,700 in damages in the following amounts: $1,960,410 jointly against both Dr. Regan and Lawnwood; and $4,574,290 against Lawnwood, as Dr. Tamar's principal. Although the circuit court entitled the judgment as a "partial final" judgment (apparently due to the personal representative's remaining actions against the other defendants), the judgment included the well-recognized words of finality—"for which let execution issue."

Dr. Regan and Lawnwood filed a motion to vacate the judgment. The motion to vacate pertinently argued Dr. Regan's and Lawnwood's counsel had untimely filed their motion for trial de novo due to excusable neglect, which could relieve them from a final judgment under Florida Rule of Civil Procedure 1.540(b)(1) ("On motion and upon such terms as are just, the

court may relieve a party or a party's legal representative from a final judgment ... for ... excusable neglect[.]").

Before the circuit court could decide Dr. Regan's and Lawnwood's motion to vacate the judgment, they filed their notice of appeal of the judgment. We relinquished jurisdiction to allow the circuit court to decide the motion to vacate.

On remand, Dr. Regan and Lawnwood filed an amended motion to vacate the judgment. The amended motion abandoned the argument that their counsel's failure to timely file the motion for a trial de novo had resulted from excusable neglect. Instead, the amended motion pertinently argued Dr. Regan's and Lawnwood's counsel's actions during the twenty days after the arbitrator's decision had sufficiently placed the personal representative on notice that Dr. Regan and Lawnwood had sought a trial de novo, and thus they had substantially complied with rule 1.820(h).

Because Dr. Regan's and Lawnwood's amended motion to vacate the judgment had abandoned the argument that their counsel's failure to timely file the motion for a trial de novo had resulted from excusable neglect, the personal representative filed a motion in this court requesting to terminate the relinquishment of jurisdiction. The personal representative argued that without the excusable neglect argument, Dr. Regan's and Lawnwood's amended motion to vacate did not raise any argument to justify a motion for relief from judgment under rule 1.540. Dr. Regan and Lawnwood appropriately agreed we should terminate the relinquishment of jurisdiction. We did so, and this appeal resumed.

## 2. *The Parties' Arguments on Appeal*

Dr. Regan and Lawnwood summarize their arguments on appeal as follows:

> The circuit court erred in entering the ... judgment [against Dr. Regan and Lawnwood] because [they] substantially complied with [Florida Rule of Civil Procedure] 1.820(h). [Rule 1.820(h)'s] purpose is to provide adequate notice to all parties of a party's intent to proceed to trial and not to be bound by an arbitration [decision]. But Rule 1.820(h) does not require strict compliance. In accordance with [Florida Rule of Civil Procedure] 1.010, [Rule 1.820(h)] must be construed to secure a just result. [Dr. Regan and Lawnwood filed] their motion for trial two days after [Rule 1.820(h)'s twenty-day] deadline. But right after the [arbitration decision] and within the [twenty]-

6

day period, [Dr. Regan and Lawnwood] substantially complied with Rule 1.820(h) by indicating—in multiple ways—their intent to proceed to trial. Considering [Dr. Regan's and Lawnwood's] substantial compliance, filing a formal motion for trial de novo two days late should not rob [them] of their right to participate in a real trial—as opposed to nonbinding arbitration in which no evidence is presented—that will re-determine and re-calculate their liability.

Even if substantial compliance were not enough, [the personal representative] waived [compliance with Rule 1.820(h)]. During [Rule 1.820(h)'s] [twenty]-day window, [the personal representative's] words and actions conveyed her intention to proceed to trial on the claims against [Dr. Regan and Lawnwood].

The circuit court also erred because it entered the … judgment [against Dr. Regan and Lawnwood] prematurely. The [circuit] court was required to enter necessary "orders and judgments" before entering the … judgment. The [a]rbitrator resolved only a subset of the claims referred to him[,] and the remaining claims still implicated [Dr. Regan and Lawnwood]. As a result, the circuit court was required to resolve the remaining claims and address costs and fees—all issues that the [a]rbitrator was directed to, but did not, resolve—before entering any … judgment, and particularly before allowing execution on it.

Finally, allowing the circuit court's … judgment to stand would lead to absurd, unjust, and inconsistent results. At trial, a jury will determine the negligence, if any, of the doctors in this case, and the vicarious liability, if any, of their employers. The [a]rbitrator assigned a percentage of fault to Drs. Regan and Tamar and found that Lawnwood was vicariously liable for their negligence. But the trial that … Dr. Tamar … and [the personal representative] requested will inevitably result in a different apportionment of liability and damages among all Defendants. For example, the [a]rbitrator found that Lawnwood was vicariously liable for the $4.6 million in damages assessed to Dr. Tamar for his 70% of fault, but the jury could find that Dr. Tamar—and therefore Lawnwood—was not negligent at all. Or the jury could find that all Defendants *other than* [Dr. Regan and Lawnwood] were 100% liable. In either event, despite the obvious

7

inconsistencies with the [arbitrator's decision], [Dr. Regan and Lawnwood] would unjustly remain on the hook to the extent and for the amount ascribed by the [a]rbitrator.

The personal representative summarizes her response to the appeal as follows:

> The [circuit] court correctly rejected [Dr. Regan's and Lawnwood's] "substantial compliance" contentions because there was <u>no</u> compliance—not substantial or otherwise. The *timing* component of Rule 1.820(h)'s [twenty]-day [deadline] is absolute and … applies separately to each party. If the [twenty-day] deadline is missed, as it was here, the [arbitrator's decision] is "final and binding" and entry of judgment is mandatory.

> Seeking a judicial rewrite of the Florida Supreme Court approved rule of civil procedure, [Dr. Regan and Lawnwood] erroneously urge this Court to obscure [Rule 1.820(h)'s *timing* component with [a] *form* aspect that allows some flexibility. However, this Court's precedent allowing some flexibility for the form involved the party timely filing *something*. No court has rewritten Rule 1.820(h) to suggest [twenty] days really means [twenty] plus two extra days in the absence of an excusable neglect argument.

> Next, estoppel is inapplicable on this record given the absence of *any* filing [in the twenty days after service of the arbitrator's decision]. In every case where this doctrine was applied … the non-prevailing arbitration party filed *something* [within twenty days after service of the arbitrator's decision] that reflected the party's desire to proceed to trial.

> Even if substantively reached, [the personal representative] was not "estopped" from insisting on [Dr. Regan's and Lawnwood's] compliance with Rule 1.820(h). Telephonically inquiring about settlement, moving to compel mediation, and providing medical records (all designed to expeditiously resolve and not proceed to trial) were actions consistent with [the personal representative's] counsel's ethical duty to prosecute her case. As such, these narrow interactions between counsel are dissimilar to those in [other cases] that plainly manifested their intentions to proceed with trial.

8

...

Finally ... Section 44.103(5)'s and Rule 1.820(h)'s requirements for entry of judgment treat direct and indirect (vicarious liability) claims the same. With respect to Lawnwood being held responsible as principal for Dr. Tamar's negligence, this is no different than if [the personal representative had] settled and released Lawnwood in exchange for payment on her principal liability claims against Lawnwood. The ... [j]udgment [against Lawnwood] benefits Lawnwood by capping its liability for Dr. Tamar's negligence regardless of how a jury may calculate and apportion his fault, and the remedy of setoff remains available to Dr. Tamar as he is jointly liable with Lawnwood. ...

The ... [j]udgment's award of $1,960,410.00 against Dr. Regan and Lawnwood must be separately analyzed and affirmed. [The personal representative] sued Dr. Regan in a separate count for his negligence and the arbitrator found that he was Lawnwood's agent. Neither [Dr. Regan nor Lawnwood] requested trial de novo. Entry of judgment in accordance with Dr. Regan's 30% [apportioned] fault is complete and his negligent treatment of [the decedent] will not be adjudicated by a second judgment. Whether a future trial may feature Dr. Regan's negligence in the context of *Fabre* defenses alleged by the remaining defendants is speculative and irrelevant for this appeal.

### 3. *Our Review*

Based on Dr. Regan's and Lawnwood's arguments on appeal, our standard of review is mixed. *See J.J.K. Int'l, Inc. v. Shivbaran*, 985 So. 2d 66, 68 (Fla. 4th DCA 2008) (the denial of a motion for relief from judgment is reviewed under the abuse of discretion standard); *Vitesse, Inc. v. MAPL Assocs. LLC*, 358 So. 3d 437, 438 (Fla. 4th DCA 2023) (the denial of a request for a trial de novo is reviewed de novo); *Strax Rejuvenation & Aesthetics Inst., Inc. v. Shield*, 49 So. 3d 741, 742 (Fla. 2010) (appellate courts apply de novo review when construing a statute or rule).

Applying the foregoing mixed standards of review, we affirm the circuit court's order granting the personal representative's motion for final judgment and the ensuing judgment conforming to the arbitrator's liability and damages determinations against Dr. Regan and Lawnwood.

9

We reach this conclusion after determining the primary case upon which Dr. Regan's and Lawnwood's "substantial compliance" argument relies—*Nicholson-Kenny Capital Management, Inc. v. Steinberg*, 932 So. 2d 321 (Fla. 4th DCA 2006)—was incorrectly decided.

Before we issued *Nicholson-Kenny* in 2006, we had a long and consistent history of enforcing section 44.103(5)'s and rule 1.820(h)'s plain language that when a motion for trial de novo is not timely filed, judgment must be entered. *See Klein v. J.L. Howard, Inc.*, 600 So. 2d 511, 512 (Fla. 4th DCA 1992) ("[U]nder the clear and mandatory provisions of section 44.303(4), Florida Statutes (1987) [section 44.103(5)'s predecessor], and rule 1.820(h), … upon the failure to move for a trial de novo within [twenty] days of the service of an arbitration award … the trial court is required to enforce the award and lacks discretion to do otherwise."); *Johnson v. Levine*, 736 So. 2d 1235, 1238 (Fla. 4th DCA 1999) ("Once a party involved in non-binding arbitration of a specific dispute under section 44.103 fails to request a trial de novo, by the express terms of the statute the award becomes final and binding. A trial court has a mandatory duty to enforce final and binding awards by, among other things, entering such judgments as may be necessary and proper to enforce a final award made by the arbitrator."); *Broward Yachts, Inc. v. Denison*, 871 So. 2d 954, 955 (Fla. 4th DCA 2004) ("Petitioner seeks a writ of mandamus to compel the trial court to enter a final judgment for damages awarded in nonbinding arbitration. Because respondents did not request a trial, the trial court was required by [section 44.103(5)] to enter a judgment, and we accordingly grant the petition."); *Connell v. City of Plantation*, 901 So. 2d 317, 319 (Fla. 4th DCA 2005) ("In this case, neither party requested a trial *de novo* within twenty days. Thus, pursuant to [section 44.103(5)], the presiding judge was required to 'enter such orders and judgments as are required to carry out the terms of the decision.' *Id.* … This court has previously held that entry of a judgment in accordance with an arbitrator's decision is a ministerial act. The trial court has no discretion to deny such a request."); *United Auto. Ins. Co. v. Ortiz*, 931 So. 2d 1025, 1026 (Fla. 4th DCA 2006) ("[E]ntry of a judgment in accordance with an arbitrator's decision is a ministerial act. The trial court has no discretion to deny such a request.") (quoting *Connell*, 901 So. 2d at 319).

However, with our issuance of *Nicholson-Kenny* in 2006, we deviated from our well-established recognition of the mandatory, ministerial, and non-discretionary enforcement of section 44.103(5). Instead, in *Nicholson-Kenny*, we created a non-statutory, non-rule-based discretionary analysis, where in the absence of the statutorily-required request for a trial de novo, a trial court could nevertheless order a trial de novo upon determining "some notice" had been given to the opposing party that its adversary is

rejecting an arbitration award and renewing its demand for trial. 932 So. 2d at 324.

*Nicholson-Kenny*'s "some notice" approach clearly conflicts with section 44.103(5) and rule 1.820(h), and no valid reliance interest or other reason exists not to recede from that precedent. Before explaining in detail the reason why we recede from *Nicholson-Kenny*, we provide a detailed review of *Nicholson-Kenny* to provide context of how the opinion came into being.

a. A Detailed Review of *Nicholson-Kenny*

In *Nicholson-Kenny*, the plaintiff sued multiple defendants for trade secret misappropriation. *Id.* at 323. The defendants moved to set the case for trial. *Id.* The circuit court entered a trial order setting the case on an August 29 calendar call, and directing the parties to participate in a pre-trial non-binding arbitration pursuant to rule 1.820. *Id.*

On August 9—twenty days before calendar call—the arbitrator rendered a decision in the plaintiff's favor against some defendants, but found other defendants not liable. *Id.*

On August 13, the plaintiff's counsel served a "Notice of Conference of Parties & Attorneys" on defense counsel. *Id.* The notice provided:

> [A] Conference has been scheduled [at defense counsel's office], pursuant to Paragraph 6 of Order Setting Trial, for all parties and/or their attorneys, to meet to DISCUSS SETTLEMENT, SIMPLIFY THE ISSUES AND STIPULATE IN WRITING TO AS MANY FACTS AND ISSUES AS POSSIBLE, PREPARE A PRETRIAL STIPULATION IN ACCORDANCE WITH THE PRETRIAL REQUIREMENTS, AND TO LIST ALL OBJECTIONS TO TRIAL EXHIBITS....

*Id.*

After the pretrial conference had occurred without settlement, the parties completed discovery, including defense counsel taking a deposition on August 28—the day before calendar call. *Id.* At the deposition, both counsel further discussed the required pretrial stipulation. *Id.*

At the August 29 calendar call, the plaintiff's counsel requested a trial date. *Id.* Defense counsel did not object. *Id.* The circuit court then set a trial for October 20. *Id.*

During the week of September 1, the plaintiff's counsel and defense counsel appeared at a uniform motion calendar hearing regarding the filing of the joint pretrial stipulation. *Id.* Both counsel told the circuit court that they expected to soon complete the stipulation. *Id.* Later that day, both counsel signed the pretrial stipulation. *Id.*

Ten days later, defense counsel filed a motion for final judgment, alleging that because the plaintiff had failed to file a motion for trial de novo, the circuit court was required to enter final judgment on the arbitrator's decision. *Id.* After argument, the circuit court agreed, finding the plaintiff had not filed a request for trial de novo within twenty days pursuant to rule 1.820(h). *Id.* The circuit court entered a final judgment per the arbitrator's decision. *See id.*

On the plaintiff's appeal, we reversed and remanded for a trial on the merits. *Id.* at 326. We reasoned the defendants were

> precluded from raising the [plaintiff's] failure to file a paper styled "Motion for Trial" under these circumstances where the case was set for trial prior to the arbitration proceeding, [the plaintiff had] filed a notice for a pretrial conference after the arbitration, and [defense counsel had] actually participated in trial preparations and docket call after the arbitration ruling.

*Id.* at 323.

In a further and lengthier explanation of our reasoning, we pertinently stated:

> *The filing of a pleading styled "motion for trial" under such circumstances **does not seem required**,* nor does the rule require that the pleading be styled "motion for trial." *Instead, we think the rule requires **some notice** to the opposing party that its adversary is rejecting an arbitration award and renewing its demand for trial, which in this case was already set.*
>
> In *Johnson* [*v. Levine,* 736 So. 2d 1235, 1239 (Fla. 4th DCA 1999),] we noted that we could not interpret "Exceptions to Arbitration Order" as requesting a trial de novo, because no mention of a trial was made anywhere in the document. We noted,

Frankly we can find nothing anywhere in any of these documents that could plausibly support an argument that in substance these defendants were really requesting a trial de novo. The words "trial de novo" appear nowhere in their papers. In fact[,] there is nothing in any of them even hinting at or suggesting they wanted a trial or further trial proceedings. They merely attack the arbitrator's findings and conclusions. In our view, the trial judge was quite correct in finding that these "exceptions" simply failed to request a trial de novo.

736 So. 2d at 1239. To the contrary, in this case, based upon the provisions of the order setting trial, [the plaintiff's counsel] filed a notice setting the … pretrial conference only four days after receiving the arbitrator's decision. In the notice, [the plaintiff's counsel] clearly indicated a desire to proceed to trial in the case. Both [counsel] attended the calendar call for the trial period, and [the plaintiff's counsel] requested a trial date in open court, in accordance with the order setting trial. [The plaintiff's counsel] met with [defense counsel] to hammer out a joint pre-trial statement. *There is no question in this case that [the plaintiff's counsel] requested a trial within twenty days of the arbitrator's decision, and there is more than a "hint" of that fact in the filings with the court.*

Even though the notice indicating a continued demand to proceed to trial was not specifically styled a "motion for trial de novo," we would conclude that [the defendants], through [their counsel's] conduct, [are] precluded from raising the issue of non-compliance with rule 1.820. [Defense counsel] did not object when … noticed to attend the pretrial conference; … worked with [the plaintiff's counsel] to develop the pretrial statement; and … did not object to setting the trial at the docket call. All of these events occurred within the time in which [the plaintiff's counsel] could have filed a "motion for trial de novo" had it known that [defense counsel] was insisting that [the plaintiff's counsel] file a document so styled. [Defense counsel] continued preparing for a trial and never revealed its argument that the notice of setting the pretrial conference in accordance with the order setting trial was insufficient to put it on notice that [the plaintiff intended to proceed with a trial.

13

> The purpose of the motion for trial [under rule 1.820] in court-ordered non-binding arbitration is to hasten the litigation along, make the parties evaluate the award, and either accept it or complete the litigation through trial. …
>
> …
>
> … [T]he motion for trial under rule 1.820 puts the other side on notice that it should be prepared for trial. It is a procedural device to hasten the end of litigation. It … should not be interpreted to introduce "gotcha" tactics into litigation.
>
> …
>
> … [I]n this case[,] [defense counsel's] words, actions, and conduct led [the plaintiff's counsel] to believe that [the defendants had] assented to [the plaintiff's] request for a trial de novo, as reflected in [the plaintiff's counsel's] filed notice to set the pretrial conference in accordance with the order setting trial. We have continually decried the use of "gotcha" litigation tactics. We again reiterate our disdain for such litigation conduct.

*Id.* at 324-26 (emphases added; internal citations omitted).

### b. Why We Recede From *Nicholson-Kenny*

We recede from *Nicholson-Kenny* because that precedent clearly conflicts with section 44.103(5) and rule 1.820(h), and no valid reliance interest or other reason exists not to recede from that precedent. Thus, such precedent must yield. *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020).

As stated above, section 44.103(5) pertinently provides:

> An arbitration decision ***shall be final if a request for a trial de novo is not filed*** *within the time provided by rules promulgated by the Supreme Court.* … *If no request for trial de novo is made within the time provided*, the decision shall be referred to the presiding judge in the case who shall enter such orders and judgments as are required to carry out the terms of the decision ….

§ 44.103(5), Fla. Stat. (2021) (emphases added).

Further, rule 1.820(h), entitled "Time for ***Filing*** Motion for Trial" (emphases added), pertinently provides:

> *Any party may **file a motion for trial**.* … ***If a motion for trial is not made within 20 days of service on the parties of the decision***, the decision shall be referred to the presiding judge, who shall enter such orders and judgments as may be required to carry out the terms of the decision as provided by section 44.103(5), Florida Statutes.

Fla. R. Civ. P. 1.820(h) (emphases added).

As can be seen, nothing in section 44.103(5)'s or rule 1.820(h)'s mandatory plain language provides—as we held in *Nicholson-Kenny*—that the filing of a motion for trial "*does not seem required*" under certain circumstances, or that rule 1.820(h) instead merely requires "*some notice*" to the opposing party that its adversary is rejecting an arbitration award and renewing its demand for trial. 932 So. 2d at 324 (emphases added).

Rather, section 44.103(5)'s and rule 1.820(h)'s plain language require a party to ***file*** a "request for trial de novo," as provided in section 44.103(5), or a "motion for trial," as provided in section 1.820(h). Thus, *Nicholson-Kenny* clearly conflicts with, if not nullifies, section 44.103(5)'s and rule 1.820(h)'s mandatory filing requirement.

Put another way, *Nicholson-Kenny* essentially wove into both section 44.103(5) and rule 1.820(h) an unauthorized "some notice" exception. Such an exception, besides not appearing in section 44.103(5)'s or rule 1.820(h)'s plain language, is ambiguous on its face and begs the question: "What exactly constitutes 'some notice,' if not in the form of a 'request for trial de novo' or a 'motion for trial'?"

The answer to that question necessarily requires a case-by-case determination of what actions—or combination of actions—should reasonably be interpreted as "some notice" to the opposing party that its adversary is rejecting an arbitration award and renewing its demand for trial. The myriad possible number of actions, or combinations of actions, likely would provide no predictability or consistency at either the trial or appellate levels. Instead, the likely result would be a patchwork of subjective rulings on whether the opposing party should have been on "some notice" that its adversary is rejecting an arbitration award and renewing its demand for trial.

15

*Nicholson-Kenny* serves as its own example of such a case-by-case determination of what constitutes "some notice."  *Nicholson-Kenny* noted a combination of several actions and communications which led to the conclusion that the defendants should have been on "some notice" that the plaintiff was rejecting the arbitrator's decision and renewing its demand for trial.  But what if not all of those actions and communications had occurred?  What if different actions or communications had occurred?

The instant case presents those very questions, requiring yet another individualized case determination.  Here, in the twenty days after being served with the arbitrator's decision, Dr. Regan's and Lawnwood's counsel: twice contacted the personal representative's counsel to discuss settling the claims which had just been arbitrated; twice discussed with the personal representative's counsel providing Dr. Regan's and Lawnwood's authorizations for the personal representative's counsel to obtain certain medical records; and coordinated the scheduling of a mediation.  Why should those actions and communications necessarily constitute "some notice" that Dr. Regan and Lawnwood were rejecting the arbitrator's decision and renewing their demand for trial, *when within those same twenty days*, Dr. Regan and Lawnwood could have complied, but did not comply, with section 44.103(5)'s and rule 1.820(h)'s plain language requirement to also file a "request for trial de novo" or "motion for trial"?

Simply stated, upon a court ordering nonbinding arbitration, any reasonable person reading section 44.103(5)'s and rule 1.820(h)'s plain language—as they are expected to do—would understand the requirement to file a "request for trial de novo" or "motion for trial" within twenty days of service of an arbitrator's unfavorable decision.  *See Boyle v. Samotin*, 337 So. 3d 313, 317 (Fla. 2022) ("This Court adheres to the 'supremacy-of-text principle' that 'the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'") (citation and brackets omitted).  We should enforce such a bright-line and easy-to-follow requirement, not only because of our obligation to enforce statutes and rules as written, but also because *Nicholson-Kenny*'s "some notice" requirement precludes predictability and consistency in our enforcement of section 44.103(5) and rule 1.820(h).

Further, our decision to recede from *Nicholson-Kenny* actually *eliminates* the "gotcha" litigation concern of which *Nicholson-Kenny* forewarned.  Our straightforward enforcement of section 44.103(5)'s and rule 1.820(h)'s bright-line requirement means that, after an arbitrator's decision, regardless of what actions or communications may subsequently occur between the parties, any party rejecting the arbitrator's decision and

renewing their demand for trial **must**, *within twenty days of the arbitrator's decision*, **file** *a "request for trial de novo" or "motion for trial."*

### 4. *Why We Stand by Our Other Recent Holdings Applying Rule 1.820*

Our decision to recede from *Nicholson-Kenny* does not affect our recent holdings applying rule 1.820 in *Polymer Extrusion Technology Inc. v. Glasshape Manufacturing, Ltd.*, 374 So. 3d 34 (Fla. 4th DCA 2023), and *Vitesse, Inc. v. MAPL Assocs. LLC*, 358 So. 3d 437 (Fla. 4th DCA 2023).

In *Polymer*, we reversed a circuit court's order which had denied a defendant's motion to vacate a judgment—on the grounds of excusable neglect under Florida Rule of Civil Procedure 1.540(b)(1)—after the defendant had failed to timely move for a trial de novo pursuant to rule 1.820(h) following a non-binding arbitration. 374 So. 3d at 36-37. To support the motion to vacate, the defense counsel filed affidavits alleging, among other things, a miscommunication had occurred between he and his legal assistant, and the failure of the assistant to calendar the deadline for filing a motion for trial. *Id.* at 37. At a hearing on the motion to vacate, the plaintiff's counsel conceded the defendant had acted with due diligence, but argued "this is simply a situation where a party forgot about a deadline," which was not excusable neglect. *Id.* The plaintiff's counsel also asserted the defendant had failed to establish a meritorious defense. *Id.* The circuit court denied the defendant's motion to vacate, finding neither excusable neglect nor a meritorious defense. *Id.* at 37-38.

On the defendant's appeal, we began our review by describing "[t]he [i]nterplay of [r]ules 1.820(h) and 1.540(b)" as being complementary:

> If a party fails to move for a trial de novo "within 20 days of service on the parties of [an arbitrator's] decision" in a non-binding arbitration, the decision "shall be referred to the presiding judge, who shall enter such orders and judgments as may be required to carry out the terms of the decision." Fla. R. Civ. P. 1.820(h). *If the presiding judge enters a final judgment, a motion to vacate that judgment should be considered on its merits and in light of case law pertaining to motions to vacate for excusable neglect under Florida Rule of Civil Procedure 1.540.*

*Id.* at 38 (emphases added; citation and other quotation marks omitted).

After having held rules 1.820(h) and 1.540(b) could be applied complementarily, we concluded the circuit court had erred in finding the

defendant had not established excusable neglect or a meritorious defense. *Id.* at 38-39. For these reasons, we reversed the final judgment and remanded for the case to be set for a trial de novo. *Id.* at 39.

Here, in contrast, after Dr. Regan's and Lawnwood's original motion to vacate had argued their counsel had untimely filed their motion for trial de novo due to excusable neglect pursuant to rule 1.540(b)(1), Dr. Regan's and Lawnwood's amended motion to vacate the final judgment *abandoned* their excusable neglect argument. In its place, they argued their counsel's actions during the twenty days after the arbitrator's decision had sufficiently placed the personal representative on notice that Dr. Regan and Lawnwood sought a trial de novo, and thus they had substantially complied with rule 1.820(h). As we have explained in this opinion, the latter argument lacks merit as a matter of law.

In *Vitesse*, we reversed a circuit court's order which had found, due to a scrivener's error in the appellants' motion for trial de novo, the appellants had not appropriately requested a trial de novo pursuant to section 44.103(5) and rule 1.820(h). 358 So. 3d at 438. Although we did not describe the scrivener's error, we reasoned: "[A]ny scrivener's error in the operative motion was trivial and did not substantially impair either appellee or the lower court from having reasonable notice of [the] appellants' desire to proceed to trial." *Id.* at 440. We stand by that reasoning. However, to the extent we relied on *Nicholson-Kenny*'s "some notice" rationale within *Vitesse*, *see id.* at 439, we abandon that reliance after having receded from that rationale in the instant case.

Here, unlike in *Vitesse*, we are not faced with a motion for a trial de novo containing a mere scrivener's error. Rather, in the instant case, Dr. Regan and Lawnwood simply failed to file *any* "request for trial de novo" or "motion for a trial de novo" as section 44.103(5) and rule 1.820(h) require.

### *Conclusion*

Based on the foregoing, we recede from *Nicholson-Kenny*, and affirm the circuit court's order granting the personal representative's motion for final judgment and the ensuing judgment conforming to the arbitrator's liability and damages determinations against Dr. Regan and Lawnwood. We have considered Dr. Regan's and Lawnwood's other arguments in this appeal summarized above, and conclude without further discussion that those arguments also lack merit. *See generally Johnson*, 736 So. 2d at 1239-40.

For our Supreme Court's possible consideration, we also certify conflict with two Second District cases—*de Acosta v. Naples Community Hospital,*

*Inc.*, 300 So. 3d 264 (Fla. 2d DCA 2019), and *Beyond Billing, Inc. v. Spine & Orthopedic Center, P.C.*, 362 So. 3d 256 (Fla. 2d DCA 2023)—both of which had relied upon *Nicholson-Kenny*, which we now hold was incorrectly decided. *See de Acosta*, 300 So. 3d at 266-67 (holding rule 1.820(h) "should not be strictly applied" where, although the plaintiff did not "technically comply" with rule 1.820(h) by filing a formal motion for trial, the plaintiff had "substantially complied" with rule 1.820(h) by filing, nine days after the arbitrator's decision, her statement of facts, identification of disputed facts, and identification of issue of law, clearly indicating that she wished to proceed to the already set trial date, and the defendant had filed its own statement of facts and identification of issues of law, leading the plaintiff to believe the defendant was also prepared to proceed to the already set trial date); *Beyond Billing*, 362 So. 3d at 257-58 (denying a petition for writ of mandamus seeking to compel the circuit court to enter a final judgment on an arbitration award, where neither party had filed a motion for trial de novo within twenty days after the arbitration award, because within twenty days of the arbitration award, the parties had executed a joint stipulated motion to amend the case management order, which "sufficiently indicated the parties' mutual desire and intent to proceed to trial" and "waived [the petitioner's request for] strict compliance with the rule").

In the Supreme Court's consideration of whether to accept conflict jurisdiction, we also note our opinion aligns with the First District's recent opinion in *Smith v. Bright*, 371 So. 3d 1021, 1021 (Fla. 1st DCA 2023) ("Smith did not file a motion for trial within the twenty-day period, and so the trial court entered a final judgment in accordance with the arbitration decision. As set out in rule 1.820(h), the trial court was required to enter 'such orders and judgments as may be required to carry out the terms of the decision as provided in section 44.103(5), Florida Statutes.' The language is straightforward. If no motion for trial is filed within the twenty-day period, the trial court must enforce the decision of the arbitrator.").

*Affirmed; conflict certified.*

KLINGENSMITH, C.J., and GROSS, MAY, DAMOORGIAN, CIKLIN, LEVINE, CONNER, KUNTZ and ARTAU JJ., concur.
WARNER, J., concurs specially with opinion.
FORST, J., recused.

WARNER, J., concurring specially.

I concur in the result, because the recent amendment to Florida Rule of Civil Procedure 1.820(h) makes clear that a party *must* file a "notice of

rejection of the arbitration decision and request for trial in the same document" within twenty days of the arbitration proceeding. *See In re Amends. to the Fla. Rules of Civ. Proc.*, Case No. SC2022-1719, - - - So. 3d - - -, 2024 WL 2858716 (Fla. June 6, 2024). And significantly, the rule now also provides that "[n]o action or inaction by any party, other than the filing of the notice, will be deemed a rejection of the arbitration decision." *Id.* While *Nicholson-Kenny Capital Management, Inc. v. Steinberg*, 932 So. 2d 321 (Fla. 4th DCA 2006), suggests that a party can substantially comply with the rule by filing documents, evincing a desire for a trial de novo, the decision basically relied on the principles of estoppel. *See id.* at 324–26. The amended rule effectively overrules *Steinberg* and other cases applying estoppel to the failure to timely file a motion for trial de novo.

While this case is not governed by the amended rule, it is clear that the parties argued *Steinberg* and that appellants claimed an estoppel on appellees to raise non-compliance with the twenty-day deadline rule. The trial court rejected those arguments and entered the judgment now on appeal. Based upon the facts of this case, the court was within its discretion to determine that no estoppel applied. These facts are clearly much different than those of *Steinberg*. Therefore, even under *Steinberg*, the trial court did not abuse its discretion.

While I concur in an affirmance, I write separately to address an issue which I find problematic, although it was not raised by the parties. That is, whether the filing of the motions for trial by appellees and other defendants was sufficient under the statute for a trial de novo as to all the parties. The court-ordered nonbinding arbitration statute, section 44.103(5), Florida Statute (2021), provides: "An arbitration decision shall be final if **a request** for a trial de novo is not filed within the time provided by rules promulgated by the Supreme Court." *Id.* (emphasis added).

In *Johnson v. Levine*, 736 So. 2d 1235 (Fla. 4th DCA 1999), we noted that section 44.103(5) referred to **a** request, but we held that the statute was party-specific. The court said:

> We read section 44.103 to operate on discrete claims, so that the request of any one of two adverse parties to a discrete claim would be sufficient to require a trial de novo on that claim; but that the failure of all adverse parties to a separate and discrete claim within a multi-claim, multi-party lawsuit to request a trial do novo would not end up requiring an omnibus trial on all other claims against all parties.

20

*Id.* at 1240. Thus, this court put its own judicial gloss on a statute, instead of adhering to the statute's unambiguous terms. Had the issue been presented, I would have sought to recede from *Johnson.*

Moreover, *Johnson* did not involve discrete claims. The medical malpractice case involved claims of negligence against multiple parties for the same injury as the cause of the plaintiff's death. The opinion even states, "[p]laintiff alleged that the negligence of one or more defendants, either singly *or in combination*, killed him." *Id.* at 1237 n.2. (emphasis added). Therefore, the claims were interrelated and not discrete.

The statute provides for a trial de novo when **a** motion for trial de novo is filed. As Judge Sasso (now Justice) wrote in *Dungarani v. Benoit*, 312 So. 3d 126 (Fla. 5th DCA 2020), the term "trial de novo" refers to "a specific type of legal proceeding," which "contemplates a trial of the *entire* case in the circuit court." *Id.* at 129–30, Thus, a partial request for a trial on some issues is inconsistent with the term "trial de novo" that the legislature used in section 44.103. Judge Sasso also noted that Florida Rule of Civil Procedure 1.820 is less precise and simply states that any party may file a motion for new trial. *Id.* at 130. Even so, she observed:

> But of course, even in enacting a procedural rule to effectuate a legislative grant, separation of powers prohibits the judiciary from amending it. Thus, we ascribe the same meaning to "request for a trial de novo" as referenced in section 44.103 and "motion for trial" as referenced in rule 1.820, despite the rule's incongruous replication of the phrase.

*Id.* at 131.

*Johnson*, on the other hand, failed to respect the supremacy of text and rewrote the statute by requiring that each party seeking a trial de novo make a separate request, rather than allowing one request for a trial de novo to require a trial of the entire case.

We must remember that this is court-ordered arbitration, not something the parties have voluntarily undertaken. And in multi-party cases involving joint and several liability, this case is a good example of why trial de novo involving all the parties should prevail when any one of the parties requests it. Here, appellant Lawnwood is alleged to be vicariously liable for two of the doctors, one of whom requested a trial de novo and the other who is precluded from the trial by the late filing of the motion. Lawnwood will still be liable in the trial for whatever the jury finds as to the one doctor. Moreover, the liability of the absent doctor may still

be tried as a *Fabre* defendant, depending on the pleadings. This may result in a verdict inconsistent with the arbitration award, particularly as to the percentage of negligence as to each defendant.

If we are going to construe the notice provision for a trial strictly in accordance with the statute and rule, then we should also construe the statute strictly as to what filing *a* motion for a "trial de novo" means. When *a* motion for trial de novo is filed pursuant to the statute, it should mean that it is a trial of all parties on all issues, not merely a trial as to the party filing the motion.[1]

*     *     *

**_Not final until disposition of timely filed motion for rehearing._**

---

[1] Parties are always free to settle voluntarily, whether there is an arbitration award or not.